# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| JAMILLE NORED, individually, and as next-of-kin to the deceased, NAZIH LAZELLE NORED, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. _____ |
| CORECIVIC OF TENNESSEE, LLC, as owner and operator of TROUSDALE TURNER CORRECTIONAL CENTER, and MARTIN FRINK, | § § § § § | JURY DEMANDED |
| *Defendants.* | § § § | |

## COMPLAINT

For her Complaint against the Defendants, the Plaintiff states to the Court and the Jury as follows:

## I.  INTRODUCTION

1.　　On August 27, 2021, Nazih Lazelle Nored—an inmate housed at Defendant CoreCivic of Tennessee, LLC's notoriously understaffed and drug-ridden Trousdale Turner Correctional Center—began suffering from an apparent fentanyl overdose.

2.　　After being left unattended for several hours without response or medical assistance, Mr. Nored died alone in his cell.

3.　　At the time of Mr. Nored's death, Trousdale Turner Correctional Center was severely understaffed in keeping with CoreCivic's policy and practice of severely understaffing the facility.

4.　　Many hours after his death, Mr. Nored's body was discovered by CoreCivic

employees. By that point, his body was cold to the touch. No one had noticed his absence or bothered to check on Mr. Nored in the hours beforehand, during which time the simple administration of Narcan both could have and would have saved his life.

5.     After overdosing, Mr. Nored was left supine for so long—and his body was in such an advanced state of decomposition by the time CoreCivic employees arrived—that his autopsy reflects "obvious rigor mortis with lividity present[,]" *see* **Ex. 1** at 1; his body had to be double-bagged by his funeral home; and his funeral home had to be fumigated because the stench of decomposition was so strong. Because Mr. Nored was left unattended for so long, CoreCivic employees were also unable to report to the medical examiner the last time that he was seen alive. *See id.*

6.     CoreCivic—which changed its name from Corrections Corporations of America in 2017 after that name became synonymous with the most insidious aspects of America's private prison industry—is the nation's most notorious private prison operator.

7.     To maintain its profit margin—and as a result of its chronic and profit-motivated deliberate indifference to inmate health and safety—CoreCivic serially underinvests in prison staff, security, and inmate healthcare at its prisons, leading to predictable and horrific results. CoreCivic accordingly boasts years of consistently failed audits and extensive reports of deficiencies and fatal misconduct at its Tennessee facilities in general and at Trousdale Turner Correctional Center in particular.[1]

---

[1] *See, e.g.,* Cassandra Stephenson, *Inmate death ruled homicide in a Tennessee CoreCivic prison where rate is twice as high as TDOC's, records show,* JACKSON SUN (Jan. 28, 2020), https://www.jacksonsun.com/story/news/crime/2020/01/28/corecivics-tennessee-prisons-have-twice-homicide-rate-tdocs/2776928001/ ("The corporation's four Tennessee facilities hold roughly 35% of the state's prison population but accounted for about 63% of the state's prison homicides."); Prison Legal News, *CoreCivic Prisons in Tennessee Have Twice as Many Murders, Four Times the Homicide Rate as State-Run Facilities,* PLN (Aug. 6, 2019), https://www.prisonlegalnews.org/news/2019/aug/6/corecivic-prisons-tennessee-have-twice-many-murders-four-times-homicide-rate-state-run-facilities/ ("from 2014 through June 2019, there were twice as many murders in the four Tennessee prisons operated by CoreCivic

(formerly Corrections Corporation of America) than in the 10 prisons run by the Tennessee Department of Correction (TDOC). Also, the homicide rate in CoreCivic facilities was over four times higher than the rate for TDOC prisons."); Brinley Hineman, *After Tennessee prison suicide, CoreCivic counselor fabricated health records of treatment: TDOC*, THE TENNESSEAN (Aug. 25, 2020), https://www.tennessean.com/story/news/crime/2020/08/26/after-tennessee-prisoners-suicide-corecivic-worker-faked-health-records/3404186001/; Demetria Kalodimos, *Woman says she paid off gangs to keep son safe in prison*, WSMV (Oct. 5, 2017), https://www.wsmv.com/news/woman-says-she-paid-off-gangs-to-keep-son-safe-in-prison/article_a4e670ea-78be-5087-86e5-a65ecd485475.html; Joseph Wenzel, *Over 1,200 staff, inmates test positive for COVID-19 at Trousdale Turner Correctional Center*, WSMV (May 1, 2020), https://www.wsmv.com/news/over-1-200-staff-inmates-test-positive-for-covid-19-at-trousdale-turner-correctional-center/article_568c03d2-8bde-11ea-a447-4b7eaabeb67b.html; Adam Tamburin, *Tennessee prison inmate dies after fight at Trousdale Turner*, THE TENNESSEAN (Jan. 26, 2020), https://www.tennessean.com/story/news/2020/01/26/tennessee-prison-inmate-dies-after-fight-trousdale-turner-correctional-center/4581013002/; Dave Boucher, *New Tennessee CCA prison stops taking inmates amid 'serious issues,'* THE TENNESSEAN (May 24, 2016), https://www.tennessean.com/story/news/politics/2016/05/24/new-tennessee-private-prison-stops-taking-inmates/84867834/; Chris Conte, *Prisons for profit: Concerns mount about Trousdale Turner Correctional Center, operator CoreCivic*, WTVF (Jun. 13, 2019), https://www.newschannel5.com/longform/prisons-for-profit-concerns-mount-about-trousdale-turner-correctional-center-operator-corecivic; Staff Report, *Scathing state audit slams Tennessee prisons, CoreCivic for staffing, sexual assaults, and deaths in jails*, WTVF (Jan. 10, 2020), https://www.newschannel5.com/news/scathing-state-audit-slams-tennessee-prisons-corecivic-for-staffing-sexual-assaults-and-deaths-in-jails; Jamie McGee, *CoreCivic shareholders granted class action status in fraud lawsuit*, THE TENNESSEAN (May 27, 2019), https://www.tennessean.com/story/money/2019/03/27/corecivic-class-action-securities-fraud-lawsuit/3289913002/; Chris Gregory, *Family seeks answers in loved one's death at Trousdale prison*, LEBANON DEMOCRAT (Jan. 2, 2021), https://www.lebanondemocrat.com/hartsville/family-seeks-answers-in-loved-ones-death-at-trousdale-prison/article_1ffe90f7-0e9f-5021-bb94-9ec1b4d23139.html; Demetria Kalodimos, *Inmates at CoreCivic prisons say they sometimes go months without medical care*, WSMV (Jun. 22, 2017), https://www.wsmv.com/news/inmates-at-corecivic-prisons-say-they-sometimes-go-months-without-medical-care/article_8d28e630-bd12-5f1c-8b68-92b9336553e1.html; Prison Legal News, *Incorrect Cause of Tennessee Prisoner's Death Reported by CoreCivic Employees*, PLN (Jun. 7, 2018), https://www.prisonlegalnews.org/news/2018/jun/7/incorrect-cause-tennessee-prisoners-death-reported-corecivic-employees/; Staff Report, *Private prison company CoreCivic's history of problems in Tennessee*, THE TENNESSEAN (Jan. 16, 2020), https://www.tennessean.com/story/news/local/2020/01/17/private-prison-corecivic-history-problems-tennessee/4470277002/; Stephen Elliott, *State audit criticizes CoreCivic facilities*, THE NASHVILLE POST (Nov. 14, 2017), https://www.nashvillepost.com/business/prison-management/article/20982796/state-audit-criticizes-corecivic-facilities; Matt Blois, *CoreCivic reports $25M in profits as COVID infects 2,500+ inmates*, THE NASHVILLE POST (Jun. 30, 2020), https://www.nashvillepost.com/business/prison-management/article/21138792/corecivic-reports-25m-in-profits-as-covid-infects-2500-inmates; Steven Hale, *Problems Persist at Tennessee's Mismanaged Prisons*, THE NASHVILLE SCENE (Jan. 22, 2020), https://www.nashvillescene.com/news/features/article/21111586/problems-persist-at-tennessees-mismanaged-prisons; Dave Boucher, *CoreCivic investigating ex-officer's allegations of negligent deaths at private prison*, THE TENNESSEAN (Dec. 12, 2017), https://www.tennessean.com/story/news/2017/12/12/corecivic-investigating-ex-officers-allegations-negligent-deaths-private-prison/946196001/; Elizabeth Weill-Greenberg, *'Just Let Him Kick,'* THE APPEAL (Sep. 6, 2018), https://theappeal.org/just-let-him-kick/; Brinley Hineman, *Murfreesboro man charged in prison cellmate's death at Trousdale*, DAILY NEWS JOURNAL (Feb. 20, 2020), https://www.dnj.com/story/news/2020/02/20/murfreesboro-man-jacob-kado-charged-death-prison-cell-mate-ernest-hill-trousdale-turner/4818354002/; Ethan Illers, *Man killed during inmate-on-inmate altercation at Trousdale Turner prison*, WSMV (Jun. 16, 2019), https://www.wsmv.com/news/man-killed-during-inmate-on-inmate-altercation-at-trousdale-turner-prison/article_8d8b6806-9066-11e9-b749-7b44cac1c002.html; Jeremy Finley, *Recorded conversations reveal life inside prison ravaged by COVID-19*, WSMV (May 6, 2020), https://www.wsmv.com/news/investigations/recorded-conversations-

8. As a result of CoreCivic's chronic and profit-motivated deliberate indifference to inmate health and safety, CoreCivic's Trousdale Turner Correctional Center is a frequent-flying Defendant in this judicial district. This Court has also been made aware of "inadequate medical staffing that was endemic of broader issues with staffing levels at CoreCivic facilities" generally, it has been made aware of the federal

reveal-life-inside-prison-ravaged-by-covid-19/article_91ef5b06-8fe2-11ea-9b75-f36db06e1ab1.html; Demetria Kalodimos, *Gang activity, security a concern at Trousdale Turner facility*, WSMV (Jun. 21, 2017), https://www.wsmv.com/news/gang-activity-security-a-concern-at-trousdale-turner-facility/article_df82a358-7073-552e-b5e4-9feb2e9cf8bc.html; Steven Hale, *Tennessee's Largest Prison Still Appears as Troubled as Ever*, THE NASHVILLE SCENE (Feb. 13, 2019), https://www.nashvillescene.com/news/features/article/21047078/tennessees-largest-prison-still-appears-as-troubled-as-ever; Jessie Williams, *Trousdale Turner Corrections Officer Arrested*, MACON COUNTY CHRONICLE (Feb. 5, 2019), https://www.maconcountychronicle.com/news/5680-trousdale-turner-corrections-officer-arrested; Brett Kelman, *At Tennessee's largest prison, diabetic inmates say they are denied insulin to 'maximize profits'*, THE TENNESSEAN (Aug. 7, 2018), https://www.tennessean.com/story/news/2018/08/07/corecivic-diabetic-inmates-denied-insulin-trousdale-turner/925297002/; Natalie Allison, *Lawmakers hear from prison rape survivor, parents of man who hanged himself in CoreCivic facility*, THE TENNESSEAN (Dec. 19, 2018), https://www.tennessean.com/story/news/politics/2018/12/19/tennessee-legislators-hear-rape-suicide-corecivic-prison/2355556002/; Dave Boucher, *Private prison chief: 'We've got work to do' at Trousdale facility*, THE TENNESSEAN (Dec. 13, 2016), https://www.tennessean.com/story/news/2016/12/13/private-prison-chief-weve-got-work-do-trousdale-facility/95223230/; Demetria Kalodimos, *Former chaplain describes conditions inside TN prison*, WSMV (Jun. 19, 2017), https://www.wsmv.com/news/former-chaplain-describes-conditions-inside-tn-prison/article_9b30af82-8297-5101-b11f-b5fd9270bf18.html; Chris Gregory, *Trousdale Turner employee charged with smuggling contraband*, LEBANON DEMOCRAT (Apr. 23, 2020), https://www.lebanondemocrat.com/hartsville/trousdale-turner-employee-charged-with-smuggling-contraband/article_6b865daf-fbc8-5a59-9a35-e84b61ace2e4.html; Andy Cordan, *Prison corrections officer in Trousdale County arrested carrying drugs*, WKRN (Jan. 20, 2021), https://www.wkrn.com/news/prison-corrections-officer-in-trousdale-county-arrested-carrying-drugs/; Dave Boucher, *Gangs, insufficient staffing plague troubled Tennessee private prison, state audit finds*, THE TENNESSEAN (Nov. 14, 2017), https://www.tennessean.com/story/news/politics/2017/11/14/tennessee-private-prison-operated-by-corecivic-blasted-ongoing-problems-new-state-audit/858884001/; Keith Sharon and Adam Tamburin, *'This is unreal': Family seeks answers in death of Trousdale Turner prison inmate*, THE TENNESSEAN (Feb. 2, 2021), https://www.tennessean.com/story/news/2021/02/03/trousdale-turner-inmate-aaron-blayke-adams-dead-family-wants-answers/4290646001/; Alex Corradetti, *Investigation underway following death of inmate at Trousdale Turner Correctional Center*, WKRN (Sep. 8, 2021), https://www.wkrn.com/news/investigation-underway-following-death-of-inmate-at-trousdale-turner-correctional-center/; Chris Gregory, *Former Trousdale Turner corrections officer indicted*, LEBANON DEMOCRAT (Oct. 7, 2021), https://www.lebanondemocrat.com/hartsville/former-trousdale-turner-corrections-officer-indicted/article_aac20d8d-16e5-5edc-9e7e-d5fd9f8bfd0e.html; Levi Ismail, *NAACP calls for closure of Trousdale Turner Correctional Center, cites 'barbaric treatment' of Black men*, WTVF (Nov. 11, 2021), https://www.newschannel5.com/news/naacp-calls-for-closure-of-trousdale-turner-correctional-center-cites-barbaric-treatment-of-black-men; Jamie Satterfield, *After eight months, investigation finds Hardeman County inmate was murdered by other inmates*, TENNESSEE LOOKOUT (May 31, 2022), https://tennesseelookout.com/2022/05/31/after-eight-months-investigation-finds-hardeman-county-inmate-was-murdered-by-other-inmates/.

BOP's "complaints about poor health services" at multiple CoreCivic facilities, it has been made aware of CoreCivic's "failures to maintain accurate records of medication administrations," and it has been made aware of at least one "inadequate emergency response in the case of an inmate who eventually died." *See, e.g., Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 486-87 (M.D. Tenn. 2019).

9. Due to CoreCivic's pattern and practice of chronically understaffing Trousdale Turner Correctional Center—and despite the Defendants' actual knowledge that fentanyl is widely available at Trousdale Turner Correctional Center and frequently results in inmate overdoses there—Mr. Nored was not discovered until long after he was dead, and he received no medical intervention in the interim.

10. As a result of CoreCivic's pattern and practice of chronically understaffing Trousdale Turner Correctional Center and the Defendants' deliberate indifference to Mr. Nored's serious medical needs, Mr. Nored died a preventable death.

11. An autopsy completed one day after Mr. Nored's death found fentanyl in his liver.

12. Though fentanyl is an illegal controlled substance, inmates have easy access to it at Trousdale Turner Correctional Center; that easy access regularly results in inmates suffering from fentanyl overdoses; and in at least one instance, an inmate gang has murdered another Trousdale Turner Correctional Center inmate using fentanyl.

13. CoreCivic employees routinely bring illegal drugs, including fentanyl, and other contraband into CoreCivic facilities to sell to inmates.[2] CoreCivic has actual

---

[2] *See, e.g.,* Prison Legal News, *CoreCivic Prison at Center of Georgia Drug Trafficking Investigation*, PLN (Nov. 2021), https://www.prisonlegalnews.org/news/2021/nov/1/corecivic-prison-center-georgia-drug-trafficking-investigation/ ("Burnett smuggled drugs, cell phones, and other items into the prison for gang members."); WTVC, *Sheriff's Office: 7 charged, including CoreCivic employee, after 2 overdoses at Silverdale*, FOX17 WZTV NASHVILLE (July 11, 2019), https://fox17.com/sheriffs-office-7-charged-including-

knowledge of this fact but has deliberately chosen not to implement security measures that would prevent it. *See generally* **Ex. 2**. For underpaid CoreCivic employees—some of whom are gang-affiliated themselves—smuggling contraband into CoreCivic facilities, including Trousdale Turner Correctional Center, is a lucrative revenue source that is motivated in part by CoreCivic underpaying its staff.

14. By deliberately understaffing Trousdale Turner Correctional Center and knowingly permitting staff to introduce contraband—including fentanyl—into that facility, CoreCivic has made a profit-motivated decision to tolerate constant inmate overdoses and overdose deaths because preventing them would be more expensive.

15. Thus, Mr. Nored suffered a fentanyl-induced overdose without receiving any medical intervention, and he died a preventable death as a result.

16. Mr. Nored's widow and next-of-kin has filed this lawsuit to recover damages for Mr. Nored's wrongful death and for her own suffering as a consequence.

---

corecivic-employee-after-2-overdoses-at-silverdale ("CoreCivic employee Alixzadra Kesley had been involved with smuggling heroin and meth into the jail."); Chris Gregory, *Prison employee charged with smuggling in marijuana*, LEBANON DEMOCRAT (June 3, 2021), https://www.lebanondemocrat.com/hartsville/prison-employee-charged-with-smuggling-in-marijuana/article_864f6e90-88e6-5f7f-aff1-53768ocd02d6.html ("An out-of-state employee at CoreCivic's Hartsville prison was arrested last week and charged with attempting to introduce drugs into the facility."); Andy Cordan, *Prison corrections officer in Trousdale County arrested carrying drugs*, WKRN.COM (Jan. 20, 2021), https://www.wkrn.com/news/prison-corrections-officer-in-trousdale-county-arrested-carrying-drugs/ ("A CoreCivic corrections officer is under investigation after he was on his way to the prison in Trousdale County with drugs on his person."); Department of Justice Office of Public Affairs, *Two Former Correctional Officers Charged with Accepting Bribes and Smuggling Contraband into Federal Prison*, UNITED STATES DEPARTMENT OF JUSTICE (Sept. 20, 2021), https://www.justice.gov/opa/pr/two-former-correctional-officers-charged-accepting-bribes-and-smuggling-contraband-federal ("a federal grand jury in the District of Kansas returned two on indictments on Sept. 22 charging two former correctional officers with smuggling drugs and other contraband into Leavenworth Detention Center[, a CoreCivic facility]."); Christopher Zoukis, *The Contraband Wars Prison authorities target books and mail, miss the goods coming through the staff door*, PRISON LEGAL NEWS (July 2021), https://www.prisonlegalnews.org/news/2021/jul/1/contraband-wars-prison-authorities-target-books-and-mail-miss-goods-coming-through-staff-door/ ("Crossroads Correctional Center guard Diana Baker and prisoner Joshua Schied were charged with conspiring to smuggle drugs into the prison, which is run by Tennessee-based CoreCivic").

## II.  PARTIES

17.    Plaintiff Jamille Nored is the former wife, current widow, and next-of-kin to the decedent Nazih Lazelle Nored, a 43-year-old man who died on August 27, 2021 while incarcerated at Defendant CoreCivic's Trousdale Turner Correctional Center.  Ms. Nored is a citizen of Kentucky, and she may be contacted through counsel.

18.    Defendant CoreCivic of Tennessee, LLC, is a private prison corporation. CoreCivic owns and operates Trousdale Turner Correctional Center, the private prison where Mr. Nored resided at the time of his preventable death.  CoreCivic is a citizen of Tennessee with its principal place of business and corporate headquarters located in Williamson County, Tennessee.  CoreCivic may be served through its registered agent at CoreCivic of Tennessee, LLC, Registered Agent: C T CORPORATION SYSTEM, 300 MONTVUE RD, KNOXVILLE, TN 37919-5546.

19.    Defendant Martin Frink is a citizen of Tennessee who is employed as the warden at Trousdale Turner Correctional Center.

## III.  JURISDICTION AND VENUE

20.    This Court has jurisdiction over the Plaintiff's federal claims in this civil action pursuant to 28 U.S.C. § 1331.

21.    This Court has supplemental jurisdiction to adjudicate the Plaintiff's state law claim related to the Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

22.    As the judicial district in which one or more Defendants reside, and all Defendants being residents of the State of Tennessee, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

23.    As the judicial district where Mr. Nored's wrongful death occurred and

where Defendant CoreCivic makes its calculated decisions to underinvest in staffing and medical care at its Tennessee facilities and tolerate narcotics trafficking by its employees, venue is independently proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

24.     The Plaintiff has authority to maintain this wrongful death action as next-of-kin to the deceased pursuant to Tenn. Code Ann. § 20-5-107 and to recover against the Defendants for her own damages pursuant to Tenn. Code Ann. § 20-5-113.

25.     The Plaintiff also has authority to maintain her own claim against Defendant CoreCivic under the Tennessee Drug Dealer Liability Act pursuant to Tenn. Code Ann. § 29-38-106(a)(1).

## IV.  FACTUAL ALLEGATIONS

26.     At all times relevant to this Complaint, Nazih Lazelle Nored was an inmate housed at Trousdale Turner Correctional Center, a private, for-profit prison that is owned, managed, and operated by Defendant CoreCivic of Tennessee, LLC.

27.     On August 27, 2021, Mr. Nored ingested enough fentanyl to cause an overdose.  Thereafter, he began experiencing the visible effects of a fentanyl overdose.

28.     Because Mr. Nored was experiencing a drug overdose, he did not and was unable to make it to breakfast on the morning of August 27, 2021.

29.     Despite Mr. Nored's absence from breakfast, which was unusual for him, no one checked on him.

30.     When prison officials ultimately came through Mr. Nored's pod for a routine roll call, they were required to confirm a verbal response from each inmate.

31.     Mr. Nored did not and could not give any such response, and timely rounds were not being conducted due to Trousdale Turner's severe understaffing, either.

32.     "In a [Trousdale Turner Correctional Center] building where [CoreCivic's

contract required] three staff posts, [Trousdale Turner Correctional Center was] generally running with one" at the time of Mr. Nored's death, and Defendant Frink knew it. *See* **Ex. 3** at 2 (Lebanon Democrat Article).

33. "Staffing remain[ed] an ongoing problem" at Trousdale Turner Correctional Center at the time of Mr. Nored's death, and Defendant Frink knew it. *See id.*

34. As of November 2021, Trousdale Turner Correctional Center had "never" been in compliance with minimum contractual staffing requirements while Defendant Frink was its warden, as Defendant Frink himself has admitted under oath:

```
23   Q.   Okay.  How many days since you've been present as
24        the warden at the Trousdale Turner facility has it
25        been in compliance with the contract for minimum

                                                          36

 1        staffing requirements?
 2   A.   It has not.
 3   Q.   It has not when, sir?
 4   A.   I'm sorry?
 5   Q.   I think you cut out.  You said it has not?
 6   A.   That's correct.
 7   Q.   Okay.  I'm going to ask the question again just
 8        because I want to make sure I have it clear.
 9            Since you've been warden at Trousdale Turner
10        how many days has Trousdale Turner been in
11        compliance with the staffing requirements under the
12        contract?
13   A.   Yes, ma'am, that's the answer I gave you.
14   Q.   Which is, it's not?  It's never -- you've never
15        been in compliance with the staffing requirements
16        since you've been warden; do I understand you
17        correctly?
18   A.   That is correct.  We have -- That is correct.
```

**Ex. 4** (Deposition of Martin Lee Frink), at 35:23–36:18.

35.    Another recent Trousdale Turner warden has testified that Trousdale Turner Correctional Center is "never going to be fully staffed." "Never[,]" and that Trousdale Turner left 733 critical posts unstaffed in December 2020:

```
15   staffing up.  That's nothing new.  I mean, that's
16   nothing new to any in every prison I've ever worked at,
17   even as a CO.  It's nothing new.  You're never going to
18   be fully staffed.  Never.  Raymond Byrd has never worked
19   at a prison, from a correctional officer until now, that
```

**Ex. 5** (Deposition of Raymond Byrd) at 23:17–18.

```
10        Q.    Okay.  And do you see that here,
11   noncompliance Item 3, under noncompliance issue, Mr.
12   Walton has written:  All critical posts shall be staffed
13   as required.  However, multiple critical posts were not
14   covered during the monitoring period for the month of
15   December.  There were 31 days in the month of December,
16   which the shift rosters reflected 733 critical posts
17   were not filled on time or were left vacant during the
18   security shift?
19        A.    I see that.
```

*Id.* at 64:10–19.

36.    Trousdale Turner's on-site TDOC monitors have also testified under oath that CoreCivic has "been consistently noncompliant" and has "never been in compliance" with contractual staffing requirements

```
BOZA PLEASANT-BEY vs STATE OF TENNESSEE
WALTON, JON on 04/08/2021                          Page 77
                                               Page 77
1        Q.    So it's fair to say that before you issued
2   this report, CoreCivic had been consistently
3   noncompliant?
4        A.    Yes.
```

**Ex. 6** (Deposition of Jon Walton), at 77:1–4.

BOZA PLEASANT-BEY vs STATE OF TENNESSEE
WALTON, JON on 04/08/2021

Page 98

Page 98

```
1        Q.      So I'm prepared to continue going all of the
2    way through all of the rest of these reports, you know,
3    to the extent that I have them.  But is it fair to say
4    that CoreCivic has never been in compliance with
5    Staffing Item 2B?
6                MR. AUMANN:  Objection to form.
7                MR. WELBORN:  Same objection.
8    BY MS. MAPLES:
9        Q.      Since you've been at the facility?
10       A.      That would be fair, yes.
11       Q.      Is it fair to say that CoreCivic has never
12   been in compliance with Staffing Item 9 since you have
13   been at CoreCivic?
14               MR. AUMANN:  Objection to form.
15               THE WITNESS:  Yes.
```

*Id.* at 98:1–15

37.    CoreCivic has also repeatedly submitted false staffing records to the TDOC:

```
15       Q.      So again, you are getting reporting from the
16   facility that is incomplete and inaccurate, right?
17       A.      Yes.
18       Q.      If we scroll down to Noncompliant Item No. 3,
19   do you see that Staffing Item 9 is, again, noncompliant?
20       A.      Yes.
21       Q.      And do you see that, again, CoreCivic has
22   noted the amount of overtime that was worked in this
23   report?
24       A.      Yes.
25       Q.      And do you see that it's 6,810.34 hours of
```

*Briggs & Associates 615/482-0037*
*Nashville, Tennessee*

*Id.* at 86:15–20

38.     When rounds were made during the time period when Mr. Nored was experiencing a fentanyl overdose, officials deviated from roll call policy and counted Mr. Nored in roll call without receiving a verbal response from him.  Such failure is common, and Defendant Frink acquiesces in it and ratifies it.

39.     Had Defendant Frink's staff complied with policy or made an effort to determine why Mr. Nored did not respond, they would have discovered that he was experiencing an active fentanyl overdose.

40.     Had officials discovered that Mr. Nored was experiencing an active fentanyl overdose, they could have and should have administered life-saving Narcan, which is available to staff at Trousdale Turner Correctional Center because fentanyl overdoses are routine there.

41.     In lieu of being administered Narcan, Mr. Nored did not receive any intervention at all until 8:46 a.m., seventeen minutes prior to his (reported) pronouncement of death.

42.     While "conducting a wellness check" in Mr. Nored's pod, three CoreCivic employees found Mr. Nored "laying face down on his assigned bunk[.]"

43.     "Officer Graves gave verbal commands to get [Mr. Nored's] attention but [Mr. Nored] did not respond" because he was already dead and had been for some time.

44.     When Mr. Nored did not respond, Supervisor Porter called a medical code.

45.     Medical personnel arrived at Mr. Nored's cell at 8:48 a.m.

46.     When medical personnel arrived, Mr. Nored's body was "very cold" to the touch, his arms were stiff, and he had "blood in his nose and bruising around his abdomen."

47. After medical personnel arrived at Mr. Nored's cell at 8:48 a.m., Mr. Nored did not have—and he never regained—a pulse.

48. Mr. Nored arrived at TTCC's medical area at 8:57 a.m.

49. Upon further observation at medical, Trousdale Turner Correctional Center staff noted that Mr. Nored not only had blood in his nose, but also in his ears and mouth.

50. Staff additionally observed that he had bruising not only to his abdomen, but also to his face, chest, and pelvic area.

51. At 9:03 a.m. on August 27, 2021, EMS personnel arrived and pronounced Mr. Nored dead. He had in fact died long before then.

52. The ease with which Mr. Nored and other inmates could obtain and ingest illegal drugs, including fentanyl, at Trousdale Turner Correctional Center was well-known to CoreCivic management and staff, including Defendant Frink.[3]

53. According to at least one former employee of the facility, "[d]rugs are probably more accessible to people at Trousdale Turner Correctional Center than on the street." *See* **Ex. 2** at 3.

54. Drugs are introduced into Trousdale Turner Correctional Center through a variety of channels, but "[t]his falls primarily on employees who are dirty[.]" *Id.*

55. "Drugs such as: fentanyl, heroin, methamphetamines, cocaine," and other

---

[3] *See, e.g.*, Samantha Max, *The other epidemic: Overdoses are spiking in Tennessee prisons, as deadly drugs circulate through supposedly secure facilities*, WPLN News (March 17, 2022) https://wpln.org/post/the-other-epidemic-overdoses-are-spiking-in-tennessee-prisons-as-deadly-drugs-circulate-through-supposedly-secure-facilities/ ("But Jason Carnett says their **Trousdale Turner facility was the worst place he could have been sent as someone with a substance use disorder**. He was there until last fall, and he says **drugs were all around him**.") (emphases added); Meghan Mangrum, *Trousdale correctional officer charged with bringing fentanyl into prison*, The Tennessean (Apr. 3, 2022), https://www.tennessean.com/story/news/2022/04/03/trousdale-correctional-official-arrested-bringing-fentanyl-into-facility-tennessee/7259884001/; Chris Gregory, *Trousdale Turner employee charged with smuggling contraband*, Lebanon Democrat (Apr. 23, 2020) https://www.lebanondemocrat.com/hartsville/trousdale-turner-employee-charged-with-smuggling-contraband/article_6b865daf-fbc8-5a59-9a35-e84b61ace2e4.html.

narcotics and contraband "are brought in by administrators, correctional officers, counselors, medical personnel and outside providers." *See* **Ex. 7** (Declaration of Raymond E. Watison), at 1, ¶ 5.

56. The Defendants made a conscious choice not to curb the flow of illegal drugs, including fentanyl, into Trousdale Turner Correctional Center by prison staff and have chosen not to implement available measures—including cell phone jamming and placing drug dogs at checkpoints—because introducing drugs into Trousdale Turner Correctional Center benefits the Defendants in several ways, including satisfying the gang members who maintain some semblance of security at the facility in the absence of adequate staff members.

57. The Defendants have made a conscious choice to retain prison staff who have been caught smuggling contraband into Trousdale Turner Correctional Center.

58. The Defendants have retaliated against employees who reported that other employees had smuggled contraband into Trousdale Turner Correctional Center.

59. Due to Defendant Frink's deliberate indifference to the prevalence of illegal drugs at Trousdale Turner Correctional Center, employees of Defendant CoreCivic have continued to introduce illegal drugs into CoreCivic facilities, including Trousdale Turner Correctional Center, since Mr. Nored's death,[4] resulting in dozens of fentanyl overdoses, many of them fatal.

60. Overdoses at Trousdale Turner Correctional Center are "common" and "rampant." *See* **Ex. 7** at 2, ¶ 13.

---

[4] *See, e.g.*, Meghan Mangrum, *Trousdale correctional officer charged with bringing fentanyl into prison*, THE TENNESSEAN (Apr. 3, 2022), https://www.tennessean.com/story/news/2022/04/03/trousdale-correctional-official-arrested-bringing-fentanyl-into-facility-tennessee/7259884001/.

61. CoreCivic employees themselves are personally involved in the trafficking of narcotics into Trousdale Turner Correctional Center, and the entire administration is aware of it. *Id.* at 4, ¶ 23.

62. Because "CoreCivic will hire anybody and everybody[,]" *see* **Ex. 2** at 4, ¶ 14, illegal drugs remain easily accessible to the inmate population of Trousdale Turner Correctional Center, despite that population's heightened risk for substance abuse.

63. Although Defendant CoreCivic purports to offer various substance abuse treatment programs,[5] in reality, "[i]nmates do not get any meaningful rehabilitative help." *Id.* at 3, ¶ 12.

64. Instead, inmates in certain units are given medication meant to aid with addiction treatment, but due to a lack of competent medication monitoring, "inmates have discovered that they can abuse them as well." *Id.* at 3, ¶ 11.

65. Though the pervasive drug market in CoreCivic facilities "could be stopped if CoreCivic actually cared to stop [it,]" CoreCivic has chosen not to stop it, because "[t]o CoreCivic, prison is just a business." *Id.* at 4, ¶ 16.

66. Despite being afforded several opportunities, no Defendant has attempted to make amends for Mr. Nored's wrongful death or the Plaintiff's damages by offering a prompt and fair settlement for actual harm caused.

## V.  CAUSES OF ACTION

### Claim #1: 42 U.S.C. § 1983—Defendants' Deliberate Indifference to Mr. Nored's Medical Needs on August 27, 2021

67. The Plaintiff incorporates and realleges the foregoing allegations as if fully

---

[5] CoreCivic, *Reducing Recidivism*, (last visited Aug. 18, 2022) https://www.corecivic.com/community/reducing-recidivism ("We believe reentry begins at the time an inmate is placed in our care.  To support this philosophy, we offer evidence-based programs including academic and life skills courses, substance use treatment, vocational training, and faith-based initiatives.").

set forth herein.

68.     The Defendants have a constitutional duty imposed by the Eighth and Fourteenth Amendments to provide adequate medical treatment to inmates in their custody and care while exercising the traditional state function of imprisoning inmates.

69.     Because Defendant CoreCivic performs a traditional state function while operating a state prison, at all times relevant to this Complaint, Defendant CoreCivic and Defendant Frink acted under the color of state law.

70.     The Eighth Amendment imposes several minimal requirements on prison officials, including requiring them to: (i) provide humane conditions of confinement, (ii) ensure that inmates receive adequate medical care, and (iii) take reasonable measures to guarantee the safety of inmates.

71.     An inmate's Eighth Amendment claim based upon deliberate indifference to medical needs is "akin to recklessness," and it carries both objective and subjective components.

72.     Unlike the State of Tennessee, Defendant CoreCivic is not entitled to Eleventh Amendment immunity and may be held liable under § 1983 if its official policies or customs resulted in the Plaintiff's injuries.

73.     Defendant CoreCivic has an unconstitutional policy or practice of maintaining chronically inadequate staffing levels, which prevent inmates like Mr. Nored from receiving timely medical attention when they experience medical emergencies such as the fentanyl overdose Mr. Nored suffered on August 27, 2021; serially underinvesting in health care services for its inmate population; and tolerating narcotics trafficking at Trousdale Turner Correctional Center.   Defendant Frink acquiesces in these unconstitutional policies and maintains and implements them.

-16-

74. Defendant Frink—who served as the warden of Trousdale Turner Correctional Center at the time of Mr. Nored's death—was aware of and personally complicit in Defendant CoreCivic's policies and practices of chronically understaffing of Trousdale Turner Correctional Center, which had never been in compliance with minimum contractual staffing requirements at the time of Mr. Nored's death.

75. Defendant Frink consciously refused to remedy Trousdale Turner Correctional Center's chronic understaffing policy despite his personal knowledge of the extraordinary and often fatal consequences that resulted from it.

76. On August 27, 2021, Mr. Nored had an objectively serious need for medical treatment that the Defendants failed to provide.

77. Mr. Nored experienced a fentanyl-induced drug overdose, for which simple treatment was available at Trousdale Turner Correctional Center through the timely administration of Narcan. Due to Trousdale Turner Correctional Center's pervasive understaffing, however, CoreCivic staff did not notice Mr. Nored's objectively serious need for medical treatment for a period of hours, causing him to die alone in his cell from a preventable fentanyl overdose.

78. As a result of the Defendants' deliberate indifference to Mr. Nored's serious medical needs, Mr. Nored died.

79. Through their deliberate indifference to Mr. Nored's serious medical needs on August 27, 2021, the Defendants failed to provide Mr. Nored with constitutionally adequate medical care in violation of the Eighth Amendment, resulting in his death.

80. Due in whole or in part to CoreCivic's pattern and practices of severely understaffing Trousdale Turner Correctional Center and turning a blind eye to the rampant availability of overdose-producing drugs, including fentanyl, Mr. Nored did not

receive any meaningful medical treatment for his serious medical needs on August 27, 2021.

81.    After ingesting fentanyl, Mr. Nored required prompt administration of Narcan, which would have saved his life.

82.    Because the Defendants failed to provide him timely medical attention before his death, Mr. Nored died.

CLAIM #2: 42 U.S.C. § 1983—DEFENDANTS' FAILURE TO PROTECT MR. NORED FROM THE DANGER OF ILLEGAL DRUGS WHILE AN INMATE AT TROUSDALE TURNER CORRECTIONAL CENTER

83.    The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

84.    Under the Eighth Amendment, "[a] viable [failure-to-protect] claim has both an objective and a subjective prong, requiring the plaintiff to demonstrate that '(1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety.'" *Zakora v. Chrisman*, No. 21-1620, 2022 WL 3221596, at *7 (6th Cir. Aug. 10, 2022) (quoting *Biship v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)).

85.    Due to the Defendants' deliberate indifference to the rampant introduction of drugs, including fentanyl, into Trousdale Turner Correctional Center, "[d]rugs are probably more accessible to people at Trousdale Turner Correctional Center than on the street." *See* **Ex. 2** at 3, ¶ 10.

86.    The Defendants were actually aware of the rampant availability of drugs in Trousdale Turner Correctional Center at all times relevant to this Complaint.

87.    At all times relevant to this Complaint, Defendant Frink, as the Warden of Trousdale Turner Correctional Center, was actually aware of and deliberately indifferent

-18-

to the continuous introduction of illegal drugs, including fentanyl, into Trousdale Turner Correctional Center.

88.     Despite his actual awareness that illegal drugs, including fentanyl, were prevalent and easily accessible within Trousdale Turner Correctional Center and were routinely introduced into the facility by his staff, Defendant Frink took no meaningful action to stem the flow of drugs into Trousdale Turner Correctional Center or to prevent inmates from ingesting them.

89.     Despite being aware of the large quantity of illegal drugs being introduced into Trousdale Turner Correctional Center by his staff and the dangerous and often fatal nature of such drugs, Defendant Frink knowingly permitted Trousdale Turner Correctional Center to operate under severe understaffing conditions, resulting in too few guards monitoring too many units and preventing staff from being able to timely provide life-saving treatment when inmates overdosed.  He has also continued to employ staff members who have smuggled contraband into Trousdale Turner Correctional Center.

90.     As a result of Defendant Frink's deliberate indifference to staffing conditions and to the rampant introduction of drugs into Trousdale Turner Correctional Center, and as a result of his failure to protect the uniquely risk-prone inmate population there from the ready availability of narcotics, including fentanyl, Mr. Nored was able to ingest fentanyl.

91.     As a result of ingesting fentanyl, Mr. Nored died of a drug overdose alone in his cell at Trousdale Turner Correctional Center on August 27, 2021.

CLAIM #3:  TENNESSEE DRUG DEALER LIABILITY ACT
TENN. CODE ANN. § 29-38-101, *ET SEQ.*

92.     The Plaintiff incorporates and realleges the foregoing allegations as if fully

set forth herein.

93.     Defendant CoreCivic "is one of the biggest distributors" and participants in "trafficking narcotics," including fentanyl, and other contraband to support the illegal drug market at Trousdale Turner Correctional Center, a facility where drugs and contraband cell phones are routinely and easily "brought in through check point[s], where administrators conduct searches." *See* **Ex. 7** at 3, ¶ 21.

94.     Defendant CoreCivic, through its employees, regularly and knowingly participates in the illegal drug market at Trousdale Turner Correctional Center, where Mr. Nored was housed at the time of his death.  Introducing drugs into Trousdale Turner Correctional Center benefits the Defendants in several ways, including satisfying the gang members who maintain some semblance of security at the facility in the absence of adequate staff members.  Gang members are permitted to profit from selling drugs and undertaking widely known but routinely unchecked extortion schemes in exchange. *See, e.g.,* Demetria Kalodimos, *Woman says she paid off gangs to keep son safe in prison*, WSMV (Oct. 5, 2017), [https://www.wsmv.com/news/woman-says-she-paid-off-gangs-to-keep-son-safe-in-prison/article_a4e670ea-78be-5087-86e5-a65ecd485475.html](https://www.wsmv.com/news/woman-says-she-paid-off-gangs-to-keep-son-safe-in-prison/article_a4e670ea-78be-5087-86e5-a65ecd485475.html) (**Ex. 8**).

95.     CoreCivic, as a practice and policy implemented by Defendant Frink, understaffs and underpays employees at Trousdale Turner Correctional Center with actual knowledge that doing so will result in staff members seeking and obtaining additional remuneration by smuggling drugs, including fentanyl, into Trousdale Turner Correctional Center.

96.     As a result, employees are incentivized to and rarely prevented from bringing illegal drugs—including fentanyl—into Trousdale Turner Correctional Center to

sell and distribute to inmates.

97.     After at least one high-level employee was caught bringing contraband into Trousdale Turner Correctional Center, CoreCivic and Defendant Frink retaliated against employees who reported the employee's illegal behavior; permitted the employee to return to work; and reported that no investigation was underway.

98.     The rampant drug trade and circulation of illegal drugs at Trousdale Turner Correctional Center includes fentanyl.

99.     CoreCivic, through its staff, participates in this illegal drug market and did so during the time during which Mr. Nored obtained and ingested fentanyl.

100.    Mr. Nored was able to obtain fentanyl while incarcerated at Trousdale Turner Correctional Center as a direct result of the knowing introduction and distribution of large quantities of fentanyl into Trousdale Turner Correctional Center by CoreCivic staff.

101.    Defendant Frink, as warden of Trousdale Turner Correctional Center at the time of Mr. Nored's death, was aware of both the presence of illegal drugs in the facility and the fact that those drugs were commonly introduced by his own staff.

102.    Despite his actual knowledge that his staff are smuggling drugs into Trousdale Turner Correctional Center, Defendant Frink has consistently failed to prevent illegal drugs from entering Trousdale Turner Correctional Center or to remove the drugs that are already in rampant circulation there and has chosen not to implement measures that would achieve that result.

103.    Due to untreated drug addiction; general feelings of hopelessness, anxiety, and depression attributable to the horrid conditions and pervasive violence at Trousdale Turner Correctional Center; and due to the fact that Trousdale Turner Correctional Center

does not provide adequate medical care to treat the many inmates who are beaten, stabbed, raped, or otherwise abused there, many Trousdale Turner Correctional Center inmates turn to widely available drugs, including fentanyl.

104. As a result of the rampant availability of fentanyl at Trousdale Turner Correctional Center, Mr. Nored overdosed on fentanyl; he was left without medical care for hours thereafter; and he died.

105. Mr. Nored was not even close to the first inmate to overdose on fentanyl at Trousdale Turner Correctional Center. He was not even close to the last, either.

106. Multiple inmates overdosed on fentanyl before and after Mr. Nored's death.

107. Multiple inmates died from fentanyl overdoses before and after Mr. Nored's death.

108. Because CoreCivic does not care when inmates die at Trousdale Turner Correctional Center except to the extent that the public learns about such deaths and becomes upset with the pervasive human rights abuses that occur there on a daily basis, the Defendants made no meaningful effort to stop the rampant flow of drugs, including fentanyl, into Trousdale Turner Correctional Center even after Mr. Nored's death, and they do not intend to do so.

CLAIM #4: LOSS OF CONSORTIUM

109. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

110. Tennessee allows for an award of loss of consortium and other damages for the death of one's spouse under Tenn. Code Ann. § 20-5-113. *See Hunter v. Ura*, 163 S.W.3d 686, 705 (Tenn. 2005) (citing *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 601-02 (Tenn. 1999)).

111.    The Defendants' wrongful acts, faults, omissions, and tortious misconduct caused the Plaintiff to suffer loss of consortium and other damages arising from the death of her husband.

112.    Accordingly, the Plaintiff is entitled to an award of damages including the pecuniary value of Mr. Nored's life and the loss of her husband's attention, guidance, care, protection, companionship, cooperation, affection, and love.

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

1.  That proper service issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2.  That the Plaintiff be awarded all compensatory, consequential, and incidental damages to which the Plaintiff is entitled in an amount not less than $1,250,000.00;

3.  That the Plaintiff be awarded punitive damages in an amount not less than $3,750,000.00;

4.  That the Plaintiff be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b);

5.  That a jury of 12 be empaneled to try this cause;

6.  That pre-judgment and post-judgment interest be awarded to the Plaintiff; and

7.  That the Plaintiff be awarded all further relief to which the Plaintiff is entitled.

-23-

Respectfully submitted,

/s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176
Lindsay E. Smith, BPR #035937
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*